GRANDE AND SON, INC. *vs.* EDWARD K. CHACE.

Middlesex.     March 8, 1955. — November 4, 1955.

Present: QUA, C.J., RONAN, WILKINS, & WILLIAMS, JJ.

*Libel and Slander.     Pleading, Civil,* Demurrer.     *Practice, Civil,* Amendment.

A demurrer to the declaration in an action for libel should not be sustained unless the published words are incapable of a defamatory meaning. [168]

Publications to the effect merely that a contracting corporation had failed to complete a substantial contract for construction of an addition to a school building on time due to the small number of workmen on the job, and that virtually no work had been done for more than two weeks, were not reasonably susceptible of a meaning defamatory of the corporation and as a matter of law were not libellous. [169]

No abuse of discretion appeared in an action for libel in denial of a motion to amend the declaration in trivial respects following sustaining of a demurrer thereto. [169]

TORT.     Writ in the Superior Court dated January 20, 1954.

A demurrer to the declaration was sustained by *Morton,* J., and a motion to amend the declaration was denied by *O'Connell,* J.

*G. Joseph Tauro & Joseph Golant,* for the plaintiff, submitted a brief.

*Alfred C. Blake,* for the defendant.

WILLIAMS, J.     This case is before us on the plaintiff's appeal from an order of the Superior Court sustaining the defendant's demurrer to a declaration for libel and on its exception to the subsequent denial of its motion for leave to amend.     It is alleged that the plaintiff was a corporation

which had been engaged in the construction of public buildings throughout eastern Massachusetts and had acquired a good reputation for "engineering and construction ability, efficiency, honesty and dependability." On November 5, 1952, it received a contract from the town of Scituate for the erection of an addition to a high school and proceeded with the necessary work. The defendant "with intent to damage the plaintiff's reputation for integrity, engineering ability, honesty, efficiency and good reputation, on or about the 10th day of December, 1953, caused to be published in a newspaper known as 'The South Shore Weekly Mirror,' published in said Scituate and circulated in Cohasset and Rockland, said County of Plymouth, a false and malicious libel, as follows:

'The slow speed of construction work on the Scituate High School Extension indicated that it will be inadvisable, if not impossible, to use the building before September, 1954, according to Supt. of Schools Edward K. Chace. This opening date is a year later than promised when the contract was awarded. Although the contract called for completion prior to November 1, 1953, the contractor, Grande Construction Company, said at the time that the building would be completed by September 1, 1953. Although the contractor's foreman now says that work will be completed by December 15, 1953, other estimates run as late as March 1, 1954.
According to Mr. Chace, the stumbling block appears to be the small number of workmen in the addition each day. Including the flooring sub-contractor's men, there are no more than 10 at the building each day.'

. . . [O]n or about the 11th day of December, 1953, [he also] caused to be published in the Quincy Patriot Ledger, a daily newspaper published in Quincy . . . and distributed in the immediate vicinity of said Quincy, the following libel:

'Supt. of Schools Edward K. Chace today strongly criticized the contractor for slow construction on the addition to Scituate High School.

"Never Be Ready"

"The firm told me that work would be completed by Dec. 15" said Mr. Chase, "yet not half a day's work has been done there since Nov. 24. Even a blind man could walk through the hall and see that it will never be ready on time." The stumbling block was the small number of workmen on the job, said Mr. Chase, "I believe the firm has a job in Winchester," he said, "and if it rains up there they send their plasterers and other men down here to work."'

. . . [T]he publication in the South Shore Weekly Mirror and the Quincy Patriot Ledger was libelous and held the plaintiff up to be inefficient in its work, untruthful, lacking in integrity and construction ability, thus endangering the good-will and favorable reputation of the business of the plaintiff. All to the great damage of the plaintiff."

The defendant avers as grounds of demurrer that the declaration sets forth no legal cause of action and that the "matters and things" alleged are not libellous.

Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community, and a demurrer to a declaration for libel cannot properly be sustained unless the published statement is not reasonably capable of being understood in a defamatory sense to the discredit of the plaintiff in the minds of a considerable and respectable class of the community. *Poland* v. *Post Publishing Co.* 330 Mass. 701, 704, and cases cited.

Respecting corporations this court in *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345, 354, approved the rule laid down in *South Hetton Coal Co. Ltd.* v. *North-Eastern News Association, Ltd.* [1894] 1 Q. B. 133, 139, 141. If statements be made in reference to firms or companies "with regard to their mode of carrying on business, such as to lead people of ordinary sense to the opinion that they conduct their business badly and inefficiently . . . the law will be the same in their case as in

that of an individual, and the statement will be libellous." "The words complained of must attack the corporation or company in the method of conducting its affairs, must accuse it of fraud or mismanagement, or must attack its financial position."

In his statements the superintendent of schools complains that the addition to the local high school has not been completed within the time provided by contract. He attributes the delay to failure by the contractor to have more than ten men currently working on the job and states that within the last eighteen days "not half a day's work has been done." The statements contain no suggestion that the plaintiff was intentionally dilatory (see *James* v. *Haymes*, 160 Va. 253, 261), that it was habitually slow in performing work, or that it was guilty of fraud or dishonesty (see *Robinson* v. *Coulter*, 215 Mass. 566). Whether the statements would be understood as imputing mismanagement and poor business methods is the only issue requiring discussion. Assertion merely of delay in performing a contract does not in itself imply bad management. There might be many reasons which would have made it unavoidable. In the performance of a construction contract, such as this, which was to run substantially for a year, labor and material difficulties might, and frequently would, be likely to intervene. We think that readers of the published articles would be cognizant of such possibility or probability. As the statements of the superintendent contained no information as to the state of the plaintiff's work, whether ten men were inadequate to perform the work then required, or why work had been, for a time, substantially suspended, such readers could not reasonably conclude that the matters alleged indicated faulty management or method.

The demurrer was properly sustained. There is no merit in the exception. The proposed changes in the declaration were trivial and the denial of the plaintiff's motion shows no abuse of discretion.

*Order sustaining demurrer affirmed.*
*Exceptions overruled.*