CENTURY READY–MIX COMPANY;
Charles Ness and Gloria Ness,
Appellants (Plaintiffs),

v.

LOWER & COMPANY,
Appellee (Defendant),

Campbell County School District; Tom Barker, d/b/a Cooper Engineering & Material Testing; Rundquist & Hard, P.C.; and Chris Hard, individually, (Defendants).

No. 88–54.

Supreme Court of Wyoming.

March 8, 1989.

H.W. Rasmussen, Badley & Rasmussen, Sheridan, for appellants.

Harold E. Meier, Lonabaugh & Riggs, Sheridan, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The issue to be resolved in this case can be captured by stating the positions of the parties. Lower & Company (Lower) prevailed in the trial court on its position that the statute of frauds incorporated in the Uniform Commercial Code, § 34–21–208(a), W.S.1977, prevents Century Ready–Mix Company and its principals, Charles and Gloria Ness, (Century) from pursuing claims based upon an alleged contract because, as a matter of law, the contract is not enforceable. Century's contention is that the law justifies supplementation of the purchase order issued by Lower in order to establish all of the terms of an enforceable contract. We hold that this controversy cannot be settled by applying only § 34–21–208(a). Century is entitled to rely upon information apart from the purchase order to establish the contract. It is apparent that there are genuine issues of material fact and that the summary judgment entered by the district court cannot be sustained. We reverse the summary judgment.

Century states the issue in this way:

"The district court erred by invalidating a 'requirements contract' contrary to sections 21–223 and 21–209 of the Wyoming Commercial Code."

Lower adds a pleading question and states the issues in this way:

"I. Did the District Court err in applying the Statute of Frauds to the dealings between Lower and Appellant?

"II. Is the defense of the Statute of Frauds waived by failure to plead specifically in the Answer when it is raised on a Motion for Summary Judgment?"

In 1986, the Campbell County School District decided to expand the high school building at Gillette. Competitive bids were obtained by the school board who then selected Lower as general contractor for the project. Lower had premised its successful bid upon bids received from various potential subcontractors, including Century, and it relied upon those bids in preparing its bid for the project. Lower chose Century to furnish the concrete needed to accomplish the job on the basis of Century's low subcontract bid. Century assumed, in submitting its bid, that it would deliver about 5,500 cubic yards of concrete. This quantity was approximately the quantity of concrete anticipated as being required for the expansion of the high school building.

After receiving advice that its bid had been accepted, Lower issued this purchase order to Century.

EXHIBIT 1

# PURCHASE ORDER

**LOWER CO., INC.**

P.O. BOX 1510
MILLS, WYOMING 82644
PH. 265-4600

To CENTURY READY-MIX CO.
P.O. BOX 2330
GILLETTE, WY. 82716

Show this Purchase Order Number on all correspondence, shipping papers, packages and invoices.

**No. THREE**

| ORDER DATE | JOB NUMBER 860162 |
|---|---|
| JOB NAME | CAMPBELL CO. H.S. EXPANSION |

SHIP TO: LOWER & COMPANY
c/o CAMPBELL CO. HIGH SCHOOL
1000 CAMEL DRIVE
GILLETTE, WY 82716

| SHIP VIA | YOUR TRUCKS | DELIVERY NEEDED THIS DATE AS CALLED FOR | TERMS FOB JOB | CHECK IF CONFIRMING VERBAL ORDER DO NOT DUPLICATE | |
|---|---|---|---|---|---|

FURNISH THE FOLLOWING READY-MIX CONCRETE MATERIALS PER SPECIFICATION SECTION 03300, INCLUDING ADDENDA #1, #2, #3, #4, #5:

| | |
|---|---|
| TYPE 1 - STRUCTURAL - 4000 PSI, AS SPECIFIED | $49.50/CY |
| TYPE 2 - TOPPING - 3000 PSI, AS SPECIFIED | $48.00/CY |
| TYPE 3 - EXTERIOR SIDEWALKS, CURBS, PAVING 4000 PSI, AS SPECIFIED | $49.50/CY |
| WATER RETAINER ADMIXTURE | $ 1.75/CY |
| SET CONTROL ADMIXTURE (1%) | $ 2.00/CY |
| SET CONTROL ADMIXTURE (2%) | $ 4.00/CY |
| HOT WATER | $ 2.50/CY |

(THESE PRICES EXCLUDE TAX)

PLEASE SUBMIT MIX DESIGNS AS SOON AS POSSIBLE.

DEPOSITION EXHIBIT
1
1-21-87

By Jack C. Ylitalo
LOWER & CO. INC.

cc(s) to be submitted per prices, delivery & specifications shown above.
Notify us immediately if you are unable to ship as specified.
Terms: Approximately the 10th of the month following satisfactory delivery, unless otherwise noted.
Sign indicating acceptance and return original copy.

ACCEPTED BY: _____

TITLE: _____ DATE: _____

This is the only document which existed relating to the concrete for the job. It is critical to note that Lower did not include any specific quantity of concrete, measured in cubic yards or any other unit, that it would be purchasing. The only specific contract terms were the prices to be paid for the concrete and other materials when, and if, purchased. The purchase order, of course, does refer to the project and provides for delivery "as called for."

After work commenced, Century delivered several loads of concrete to the high school expansion job site. An independent testing laboratory tested the concrete and

concluded that it did not measure up to the strength standards required by the school district. Century protested the result of those tests and obtained independent testing, at its own expense, which showed the concrete was within the required standards. Even so, the school district ordered Lower to "stop pouring," and compliance with that order would have resulted in a complete work stoppage. Lower then asked the school district if obtaining the concrete from another supplier would be an acceptable alternative. The school board agreed to this suggestion, and work on the expansion project continued. Century had not been involved in this decision and discovered it only when its loaded trucks were turned away from the job site. From that point on, the concrete was delivered by the new supplier. The contract dispute between Century and Lower followed.

The trial court granted a motion for summary judgment submitted by Lower. The argument that the contract claim by Century could not be sustained because the alleged contract did not comply with § 34–21–208(a), W.S.1977, was accepted. Century has appealed the order granting summary judgment.

> Section 34–21–208(a), provides as follows: "Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."

The parties agree that the purchase order contemplated the sale of concrete for an amount in excess of $500; that the purchase order does constitute a writing within the statute; and that the purchase order is signed by an agent of Lower. The price terms are clear and unambiguous. The dispute focuses upon the phrase which reads "but the contract is not enforceable under this paragraph beyond the quantity of goods shown in the writing." The purchase order does not set forth any specific quantity of concrete.

Century points, however, to § 34–21–209, W.S.1977, which states, in pertinent part:

> "(a) Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
> "(i) By course of dealing or usage of trade (section 1–205 [§ 34–21–212]) or by course of performance (section 2–208 [§ 34–21–215]); and
> "(ii) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Century then invokes the provisions of § 34–21–223, W.S.1977:

> "(a) A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded."

Century contends that, according to the usage in the trade, concrete generally is obtained by a purchase order such as this, and that the purchase order contemplates the requirements for the job. In connection with this argument, the provisions of § 34–21–124, W.S.1977, become significant. That statute provides, in pertinent part:

> "(b) A usage of trade is any practice or method of dealing having such regularity or observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the

transaction in question. The existence and scope of such a usage are to be proved as facts * * *.

"(c) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement."

In summary, Century's position is that the purchase order refers to the Campbell County high school expansion job. The job specifications include an estimate of concrete needed for completion, although it seems clear that this is an open-ended estimate because work such as this is not accomplished in a carefully controlled environment, and the quantities can vary substantially. Century then urges that the issuance of a purchase order such as this is consistent with the usage of the trade and that, according to the usage of the trade, it is understood to be a requirements contract.

We are persuaded by authority cited by Century. In *Wilsonville Concrete Products v. Todd Building Company*, 281 Or. 345, 574 P.2d 1112 (1978), the court held that a purchase order very much like the one involved in this case "memorialized a 'Requirements Contract.'" In *Chicopee Concrete Service, Inc. v. Hart Engineering Company*, 20 Mass.App. 315, 479 N.E. 2d 748 (1985), the court held the Uniform Commercial Code to be controlling with respect to a subcontract for the sale of concrete and, relying upon *Mishara Construction Company, Inc. v. Transit–Mixed Concrete Corporation*, 365 Mass. 122, 310 N.E.2d 363 (1974), held that the "purchase order constituted a valid contract." *Chicopee*, 479 N.E.2d at 750. In that case, as in this one, the sale and purchase of concrete was memorialized only through a simple purchase order, and the general contractor violated the agreement by relying upon another supplier. Its attempt to justify its action on the premise that no valid contract existed was rejected by the court.

We conclude that the resolution of this issue in Oregon and Massachusetts is compatible with cases which this court has decided, and that the rule articulated by those courts represents the correct view of the law.

Considering the provisions of § 34–21–223(a), quoted above, there can be no doubt that a contract is contemplated under the Uniform Commercial Code in which the quantity term is not clearly and specifically stated but, instead, is described in terms of "requirements" or "output." We have recognized that statutory provisions become a part of the bargain contemplated by the parties in Wyoming as though the statute actually were included in the terms. *Meuse–Rhine–Ijssel Cattle Breeders of Canada Ltd. v. Y–Tex Corporation*, 590 P.2d 1306 (Wyo.1979); *Tri–County Electric Association, Inc. v. City of Gillette*, 584 P.2d 995 (Wyo.1978). It further is clear that the legislature, in adopting § 34–21–209, quoted above, intended that written agreements within the Uniform Commercial Code could be explained or supplemented by "usage of trade" evidence. A contract which appears ambiguous in this regard can be explained by parol evidence. *Mountain Fuel Supply Company v. Central Engineering & Equipment Company*, 611 P.2d 863 (Wyo. 1980); *Y–Tex Corporation*. As they offered to do in the materials considered for purposes of summary judgment, Century is entitled to produce evidence of "usage of trade," including the quantity terms, to supplement the terms of the agreement. The material which was presented leads to a strong inference that because of the particular nature of this transaction, calling for an undetermined quantity of concrete, "usage of trade" is a central issue.

The burden is upon Lower to demonstrate that the writing was intended as a total integration to bring it within the concept of § 34–21–209(b), W.S.1977. *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979). Conversely, Century must establish the "usage of trade" to justify its reliance upon the other statutes which it urges in this appeal. It must carry that burden of proof at trial. *Valentine v. Ormsbee Exploration Corporation*, 665 P.2d 452

(Wyo.1983); *Mountain Fuel*. If the "usage of trade" is established, however, those who engage in the given trade or industry are presumed to have knowledge of it and are bound by it. Actual knowledge is not essential. *Valentine*.

█ It is a well-accepted doctrine that the Uniform Commercial Code parol evidence rule is intended to liberalize the rigidity of the common law and to eliminate the presumption that a written contract is a total integration. *Zwierzycki v. Owens*, 499 P.2d 996 (Wyo.1972). In addition, the Uniform Commercial Code is intended to expand commercial practices through custom and usage as well as by agreement between the parties. Section 34–21–102, W.S.1977. This purpose demands a liberal construction. Rigid adherence to the statute of frauds is contrary to this philosophy, and our policy has been to sustain a contract whenever possible; we have not sought technical grounds for defeating a contract. *Kuehne v. Samedan Oil Corporation*, 626 P.2d 1035 (Wyo.1981); *Tri–County Electric*, 584 P.2d 995. This case does not justify a different approach.

█ In summary, the philosophy of the Uniform Commercial Code and a consideration of all its provisions leads to a suggestion that this agreement was not integrated by the purchase order. The "usage of trade" affords a method to establish the quantity requirement of § 34–21–208(a). The materials submitted in connection with the resistance to the motion for summary judgment demonstrate facts that could justify a conclusion that the quantity of concrete contemplated by the parties was the quantity needed for the job. There is a genuine issue of material fact as to the intent of the parties in entering into this agreement. Therefore, summary judgment was not proper. *Y–Tex Corporation*, 590 P.2d 1306. The summary judgment entered by the district court is reversed.