The STATE of Wyoming; The Town of Jackson, Teton County, Wyoming; and The Board of County Commissioners of Teton County, Appellants (Defendants),

v.

Frank HOMAR; Sally Homar; Paul Homar; and Linda Martin, partners, doing business under the firm name of Flat Creek Holdings, Ltd., a limited partnership, Appellees (Plaintiffs).

No. 90–10.

Supreme Court of Wyoming.

Oct. 9, 1990.

Joseph B. Meyer, Atty. Gen., and Lawrence A. Bobbitt, III, Senior Asst. Atty. Gen. (argued), for appellant State.

David K. Larson (argued), Jackson, for appellant Town of Jackson.

Paul O. Vaughn, Teton Deputy County Atty. (argued), Jackson, for appellant Teton County.

James K. Lubing (argued), of Goody and Lubing, Jackson, for appellees.

Before CARDINE, C.J.*, and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Justice.

This case concerns the permissible uses of an easement for a public road right-of-way. Appellants installed a bus turnout on the right-of-way. The trial court granted appellees' motion for summary judgment requiring removal of the bus turnout.

We reverse and direct entry of judgment in favor of appellants.

Appellants Board of County Commissioners of Teton County and Town of Jackson [1] frame the issue as:

---

* Chief Justice at time of oral argument.

1. The Jackson–Teton County Joint Powers Transportation Board is listed as joining in this

"Whether the district court improperly applied principals of law governing private easements as opposed to principals of law governing public rights of way in determining that the construction of a bus turnout and sidewalk should be enjoined."

Appellant State of Wyoming presents these issues:

"I. Is the construction of a safety bus turnout within an existing highway easement a legitimate highway purpose?

"II. Whether the construction of a safety bus turnout is within the police power of the government so that any damage to the holder of the underlying fee interest is *damnum absque injuria?*"

Because the first issue raised by the State resolves this case, we do not reach the State's second issue.

This easement, acquired by the State in 1938 from Ella Karns, granted "the right to lay out, construct, inspect, operate and maintain a road for the use of the public over and across" the land. The Homars were aware of the easement when they purchased this land in fee in 1965. U.S. Highway 89–187 crosses Homars' land within the easement. The Homars' restaurant is located on this land adjacent to the easement. The land and restaurant are leased to Bubba's Restaurant.

The Jackson–Teton County Joint Powers Transportation Board operates a public transportation system which runs buses between Jackson, Wilson and Teton Village. Before construction of the bus turnout, the buses loaded and unloaded passengers in the parking lot used by Bubba's Restaurant and adjacent businesses in order to avoid stopping traffic on the highway. The highway is classified as a principal arterial highway and had an estimated traffic volume of 18,000 vehicles per day in 1986. During the winter months of 1986–87, a total of 3,211 passengers boarded the buses at this location. This number increased to 4,310 the following winter. In 1986, representatives from the businesses in the vicinity requested that the joint powers board

build a bus stop in this area. They were concerned that the practice of using the parking lots for loading and unloading the passengers was causing congestion in the parking lots.

Construction of the bus turnout began on November 1, 1988, and was completed on November 18, 1988. The turnout is located within the highway easement and right-of-way. Frank Homar learned of the project when he drove by the property in November of 1988 and observed the construction in progress. Suit was filed on November 23, 1988, seeking money damages and an injunction requiring removal of the bus turnout.

■ All of the parties filed motions for summary judgment. The court granted the Homars' motion for summary judgment holding that the addition of the bus turnout created an impermissible, additional burden on the servient estate. The court ordered that the bus turnout be removed and the property returned to its former state. The order requiring removal of the turnout was stayed pending this appeal.

■ The Homars ask us to review the proceedings as if the court had conducted a trial. They contend that, because all parties submitted motions for summary judgment, this "is an appeal from a case * * * 'tried' on briefs and sworn affidavits." We disagree. First, despite a March 10, 1989 order stating that the matter was tried upon briefs and affidavits, a January 18, 1989 order and other parts of the record indicate that the matter was decided upon cross-motions for summary judgment. The fact that all parties filed motions for summary judgment does not require the trial court to grant any of the motions and preclude the need for a trial. 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720, pp. 16–25 (1983). Second, the denial of a summary judgment motion is not reviewable as it is not a final order. *Kimbley v. City of Green River,* 663 P.2d 871, 888 (Wyo.1983); *see* W.R.A.P. 1.04 and 1.05. Thus, our review of a grant

brief. Although that entity is named on the caption in the district court action, it did not

join with the other appellants in this appeal and is not named on the caption to this appeal.

of a summary judgment motion is the same whether the review is of a grant of the first motion filed or of a cross-motion. *See, e.g., Stratman v. Admiral Beverage Corp.,* 760 P.2d 974 (Wyo.1988). The propriety of the court's granting the Homars' motion for summary judgment is reviewed in this appeal.

A grant of summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Brazelton v. Jackson Drug Co.,* 796 P.2d 808, 810 (Wyo.1990); *Wagner v. First Wyoming Bank, N.A. Laramie,* 784 P.2d 224, 226 (Wyo.1989). The undisputed material facts in this case are that the State holds a perpetual easement for a road upon which the bus turnout was built and the Homars own the servient estate.

██ The rights of the easement holder in another's land are determined by the purpose and character of the easement. *Bard Ranch Co. v. Weber,* 557 P.2d 722, 731 (Wyo.1976). The manner in which the easement is used does not become frozen at the time of grant. *Id.* An easement for a road or a highway does not limit its use to the movement of vehicles. Uses related to traffic movement are within the scope of the easement. The grant of a public road easement embraces every reasonable method of travel over, under and along the right-of-way. *Herold v. Hughes,* 141 W.Va. 182, 90 S.E.2d 451, 458 (1955). Thus, the running of power and telephone lines above the ground and pipelines underneath do not increase the burden on the servient estate and are permissible uses. *E.g., Bentel v. County of Bannock,* 104 Idaho 130, 656 P.2d 1383 (1983); *Fisher v. Golden Valley Elec. Ass'n, Inc.,* 658 P.2d 127 (Alaska 1983). *See* W.S. 1–26–813. The reason underlying this policy is that the services and products these conveyances provide may change from earlier times when they were provided by messengers and freight wagons. Change was contemplated and must be accommodated in an advancing society. Thus, overhead transmission lines and underground pipelines are simply technologically advanced adaptations of traditional highway uses. *Fisher,* 658 P.2d at 129.

The operation of a public mass transit system is also within the realm of permissible uses of a road easement. Indeed, like pipelines and transmission lines, the bus line provides an advancement in the more efficient use of transportation resources. Paramount to this use of the easement, as well as all others, is ensuring public safety. *Ankrim v. South Carolina State Highway Dept.,* 251 S.C. 42, 159 S.E.2d 911, 914 (1968). It is incidental to this use that the bus have a safe place to load and unload passengers. Without that right, not only would the safety of the public be jeopardized, but the right of the public to use the easement would be unduly restricted. *See Johnston v. Boise City,* 87 Idaho 44, 390 P.2d 291 (1964). The construction and operation of a bus turnout on the right-of-way is a legitimate use of the road easement held by the State.

As further proceedings in this matter would serve no useful purpose, on remand we direct entry of judgment in favor of the State. *Oedekoven v. Oedekoven,* 538 P.2d 1292, 1294 (Wyo.1975).

Reversed.