**CENTURY READY-MIX COMPANY;**
**Charles Ness and Gloria Ness,**
**Appellants (Plaintiffs),**

v.

**CAMPBELL COUNTY SCHOOL DIS-**
**TRICT; Lower & Company; Tom**
**Barker, d/b/a Cooper Engineering &**
**Material Testing; Rundquist & Hard;**
**and Chris Hard, individually, Appellees**
**(Defendants).**

**No. 90–129.**

Supreme Court of Wyoming.

Aug. 20, 1991.

H.W. Rasmussen, Badley & Rasmussen, P.C., Sheridan, for appellants.

John A. Coppede, Redle, Yonkee & Toner, Sheridan, for appellee Campbell County School Dist.

Robert Brown, Lonabaugh & Riggs, Sheridan, for appellee Tom Barker d/b/a Cooper Engineering and Material Testing.

J. Stan Wolfe and S. Gregory Thomas, Banks, Johnson & Wolfe, Gillette, for appellee Chris Hard and Rundquist & Hard.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Century Ready–Mix Company (Century) appeals the trial court's orders granting summary judgment to appellees in this suit arising out of an agreement to provide concrete for an addition to Campbell County High School in Gillette, Wyoming.

Appellant raises the following issue:

[Whether] [t]he District Court erred in granting Summary Judgment to Appellees, Campbell School District, Rundquist & Hard, P.C., and Chris Hard, and Tom Barker dba Cooper Engineering & Material Testing.

We affirm the orders granting summary judgment.

## FACTS

This case is before us a second time. In *Century Ready–Mix Company v. Lower & Company,* 770 P.2d 692 (Wyo.1989) (*Century I*), we reversed summary judgment entered against Century and in favor of Lower & Company, the general contractor. We are now faced with an appeal from orders granting summary judgment to the other defendants.

Some of the facts presented here overlap those of our earlier opinion. In 1986, Campbell County School District (CCSD) decided to expand the Campbell County High School building in Gillette. CCSD let bids, and Lower & Company (Lower) was chosen as the general contractor for the project. Lower entered into a detailed, standard form agreement with CCSD.

Appellee Rundquist & Hard contracted with CCSD to provide architectural services. Rundquist & Hard signed a written standard-form contract with CCSD. Appellee Tom Barker, doing business as Cooper Engineering and Materials Testing (C.E. & M.T.), was hired by CCSD to do initial geotechnical investigation and to provide materials testing after construction began, apparently without a formal, written contract.[1]

Century received a purchase order from Lower to supply concrete for the project. C.E. & M.T. tested samples of Century's concrete as it was poured. The results of some of the 28–day tests [2] showed that the concrete samples failed to meet the design

---

1. In its brief C.E. & M.T. makes reference to the "terms of a contract" with the school district, but provides no citation for any written contract entered into the record embodying these "terms". In his deposition, Tom Barker stated that he had no written contract with the school board but that C.E. & M.T. served "at the pleasure of the school district."

2. The affidavit of Century's expert contained in the record describes the testing process as follows:
   (1) Samples of concrete are placed into molds to form cylinders.

(2) The cylinders are cured under strict temperature and humidity controls, and tested at regular intervals, *e.g.* 7, 14 and 28 days, with a minimum of two cylinders being tested after 28 days.
(3) The cylinders are "capped" to insure a dead level load-bearing surface for step 4; and
(4) Finally, the cylinders are compressed along the longitudinal axis by a calibrated hydraulic ram until they fail.

specifications required by the district. Specifically, the concrete broke at lower pressures than those required.

Century then called in an independent expert to evaluate C.E. & M.T.'s testing procedures. The expert, William Rossi, found that C.E. & M.T.'s testing procedures did not meet American Concrete Institute (ACI) and American Society for Testing in Materials (ASTM) standards. He characterized the procedures used by C.E. & M.T. for testing Century's concrete as "the most careless and negligent procedures I had observed in 27 years of concrete testing."

Chris Hard, the architect, recommended to the school board that core samples of the concrete already in place be removed and tested. Testing showed that the concrete in place met the design requirements and specifications.

The school board met on February 10, 1987. At this meeting, Chris Hard gave a progress report on construction of the high school addition. Larry Hite, one of the school board members, questioned Hard about the quantity of concrete already poured and then made a motion to stop the pouring of concrete until the testing problems could be worked out. During the discussion which ensued on this motion, Tom Barker of C.E. & M.T. stated that the unusual variations noticed in the stress the samples could handle was "probably a mistake in the ingredients." Barker suggested that the job ought to continue under "more intense investigative activities to lay the basis for design mix revision."

Hite asked Chris Hard for his opinion whether there was a problem with continuing to pour. Hard responded that in his opinion there was no major problem. He indicated that the already-poured concrete met the specifications of the bid. Nevertheless, the board voted to suspend pouring.

Barker then informed the board that an expert from the School of Mines in Rapid City had reviewed the procedures used on the projects and had indicated that the testing procedures were not the cause of the inconsistent test results. He stated that he "hoped" that the error was a product error, rather than a testing error.

After the meeting, Hard telephoned Jack Ylitalo, Lower's project coordinator, and advised him of the board's ruling. Hard received a return call from Dennis Lower, Jr., who asked him whether pouring could continue if the concrete supplier were changed. Hard stated he would pass this request on to the board.

Hard returned, at about 5:00 p.m., to the area where the board met. Most of the board members were still present. After explaining to board member Larry Hite that there may not have been a problem with the concrete, Hard presented Lower's proposal to change concrete suppliers to various board members, and got their assent. (Apparently, no formal motion was made, nor is there any indication of official action taken in the board minutes on this point). Hard then called Lower back and they agreed to proceed quickly with the new supplier. The new supplier began pouring the next day.

Century sued Lower, the general contractor, for breach of contract. It sued CCSD for intentional interference with contract, negligent hiring, defamation, and breach of contract. It sued Tom Barker d/b/a C.E. & M.T. for negligence, intentional interference with contract, and defamation. It sued Chris Hard, individually, and Hard & Rundquist, P.C., for negligence and malpractice in breach of their contractual duties to the other defendants. The surviving claims involved in this appeal are against CCSD, Tom Barker d/b/a C.E. & M.T., and Chris Hard and Rundquist & Hard, P.C.

## DISCUSSION

### Standard of Review

■ Summary judgment is properly granted only where there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *State of Wyoming v. Homar*, 798 P.2d 824, 826 (Wyo.1990); *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District No.*

*One,* 763 P.2d 843, 847 (Wyo.1988). When reviewing a grant of summary judgment, we review the judgment in the same light as the district court, using the same information. A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts.

*Doud v. First Interstate Bank of Gillette,* 769 P.2d 927, 928 (Wyo.1989) (quoting *Garner v. Hickman,* 709 P.2d 407, 410 (Wyo. 1985)).

■ If we can uphold summary judgment under the record presented under any proper legal theory, we will do so. *Reeves v. Boatman,* 769 P.2d 917, 918 (Wyo.1989).

*Summary Judgment for Campbell County School District*

Defamation

Century argues that issues of material fact remain concerning its defamation claim against the school district. The alleged defamatory statements were made during the school board meeting on February 10, 1987, and are contained in the minutes of that meeting:

A discussion ensued during which Mr. Barker explained that the concrete cores which are poured, cured and then broken vary unusually widely in the amount of stress they can handle. This is probably a mistake in the ingredients. The testing guidelines are set by the American Concrete Institute. Mr. Barker said his firm, C.E. & M.T., has been authorized to investigate everything that is going on at the site. The firm conducted an investigation as to procedure and is satisfied.

Later in the meeting, school board member Dr. Antrim asked, "If it is not a testing error, then is it a product error?" To which Mr. Barker responded, "That is what we hope, too."

■ Century claims Barker, the owner of C.E. & M.T., was acting as an "agent" of the school board when he made these statements, and others, at the meeting. Further, Century argues that the school district is vicariously liable for the statements. Century concedes that C.E. & M.T. "qualified as an independent contractor" on the project, but attempts to argue that C.E. & M.T. was nevertheless an agent of the school board for purposes of Barker's statements.

■ Establishing the existence of an agency relationship is the burden of the asserting party. *Czapla v. Grieves,* 549 P.2d 650, 653 (Wyo.1976). Here, Century provides no cogent argument as to why independent contractor C.E. & M.T. or its owner, Tom Barker, should be considered an agent of the school board. Century's claim that the school board is vicariously liable for statements made by Tom Barker is unsupported. We hold that no agency relationship has been demonstrated between either Barker or C.E. & M.T. and the school board or school district sufficient to make the latter liable for Barker's statements.

■ Nor, in our opinion, were the challenged statements defamatory. A defamatory statement is one which "tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held." *Tschirgi v. Lander Wyoming State Journal,* 706 P.2d 1116, 1119 (Wyo.1985). *See also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 111 at 773 (5th ed. 1984).

Here, the statements made by Barker merely suggested that the mix was probably, or might have been, the problem with the test results. Barker's statements did not directly impute any misfeasance to Century. Nor did Barker recommend that any action be taken against Century, other

than to continue to investigate what he saw as a problem with the mix. Under the circumstances, these statements were simply not defamatory. *See Grande & Son, Inc. v. Chace,* 333 Mass. 166, 129 N.E.2d 898 (1955).

For the reasons stated above, we affirm the order of summary judgment on Century's claim for defamation against Campbell County School District.

### Interference with Contract

Century next asserts that summary judgment was inappropriate on its claim of interference with contractual relations. The trial court found that this claim was barred because it was not included within the waiver of immunity provided by the Wyoming Governmental Claims Act, W.S. 1–39–101 et seq. (June 1988 Repl.). We need not reach the issue of immunity because we hold that the school district's actions under the circumstances did not constitute interference with contract and were justified to protect its own interests.

■ A claim of intentional interference with contractual relations requires that the plaintiff show

(1) the existence of a valid contractual relationship;

(2) knowledge of the relationship on the part of the interferor;

(3) intentional and improper interference inducing or otherwise causing a breach or termination of the relationship; and

(4) resultant damage to the party whose relationship has been disrupted.

*Dynan v. Rocky Mountain Federal Savings and Loan,* 792 P.2d 631, 641 (Wyo. 1990) (quoting *Dehnert v. Arrow Sprinklers, Inc.,* 705 P.2d 846, 850 (Wyo.1985)).

■ We have recognized a privilege to interfere with contractual relations where the defendant, in good faith, asserts his own legally-protected interest which he believes may be impaired or destroyed by the performance of the contract. *Toltec Watershed Improvement District v. Johnston,* 717 P.2d 808, 814 (Wyo.1986). Here, the school district first acted to protect its own interests in not having questionable concrete poured. After it voted to stop pouring concrete, the board did not recommend that Century be fired. Board members merely assented to Lower's own decision to dismiss its subcontractor, again acting in the district's own interests in having the project move forward.

The deposition testimony of the board members shows that the board did not take an active role in Lower's dismissal of Century. Larry Tanner stated that he was asked if he would have a problem if another supplier was on the job pouring concrete. He answered no, not as long as the project specifications were met. Daniel Siebersma remembered Hard asking board members whether Lower could start pouring again if it had another supplier. The response, as he remembered it, was that the board had instructed its architect and engineer that they could proceed with pouring when they were satisfied that the specifications could be met. James Galt stated that he told Chris Hard "[t]hat's not my problem. I don't have anything to do with the supplier. That's Lower's problem. If he's not satisfied, let him take care of it." Larry Hite stated that Chris Hard came to him after the board meeting and asked if they could continue pouring concrete if Lower used another concrete company until they found out what the problem was with the existing concrete company. Mr. Hite agreed to the request.

In short, the school district did not "induce" or "otherwise cause" the breach of the relationship between Lower and Century. It merely acted to protect its own interests. There has been no showing that the district acted in bad faith. Its actions are privileged under our previous cases. Summary judgment was properly granted for CCSD and against Century on Century's claim of interference with contract.

### Punitive Damages

Since we affirm summary judgment for CCSD on Century's other claims, its claim for punitive damages must also fail, because there is no underlying claim to support it. *Condict v. Condict,* 664 P.2d 131, 136 n. 3 (Wyo.1983).

*Summary Judgment for Rundquist & Hard, P.C., and Chris Hard*

■ Century's claim against Rundquist & Hard and Chris Hard is based on negligence and malpractice. Century argues that Hard was responsible for overseeing the work and supervising construction and was responsible for providing arbitration concerning the quality of the concrete and that Hard breached these duties to Century.

The trial court granted summary judgment to Rundquist & Hard and Chris Hard on the basis that they owed no contractual duty to Century on which to base Century's claim. The duty of care architects owe to contractors in the absence of contract is discussed in Annotation, *Tort Liability of Project Architect for Economic Damages Suffered by Contractor*, 65 A.L.R. 3rd 249, § 2(a) (1975). The annotation notes that a majority of jurisdictions now recognize a tort duty of care in the absence of contractual privity. However, we do not need to reach this issue, because we hold that the architects in this case did not fail to use reasonable care in obtaining or relaying information for the school district.

Century fails to show that Chris Hard and Rundquist & Hard, P.C., acted negligently by virtue of Hard's statements to the board. Although he informed the board of the "erratic breaks", Hard also told the board that in his opinion there was no "major problem" with Century's continuing to pour concrete. Once the board voted to suspend pouring by Century, Chris Hard acted only as a messenger for Lower's proposals to the board but there is no evidence that he himself recommended that the board change subcontractors. No evidence exists that Hard failed to use reasonable care in obtaining or relaying the information to the school district.

■ Century further argues that Hard and his firm breached a duty to arbitrate the dispute over the quality of the concrete. The trial court found that there was no arbitration clause of record except for the one contained in Rundquist & Hard's contract with CCSD. That clause contains the following provision: "No arbitration, arising out of or relating to this Agreement, shall include, by consolidation, joinder or in any other manner, any additional person not a party to this agreement except by written consent * * *."

Century was not a party to the agreement and did not obtain the parties' consent. Thus, the arbitration clause did not impose a duty upon Hard and his firm to arbitrate Century's concern over concrete testing.

Century argues that the "ACI Manual of Concrete Practice 1983" and the "ASTM Standards C94" were made part of the project specifications. Century claims that the ACI Manual provision requires the architect to ensure that qualified and conscientious inspectors are on the job. The ASTM standard, it says, requires the architect to arbitrate disputes in case there is a dispute concerning the quality of ready-mix delivered to the job site. However, neither the Manual section nor the applicable standard is included in the record on appeal before this court. This means we have nothing before us to consider regarding these claims. This court will not consider factual recitations in briefs unless supported in the record. *Hayes v. American National Bank of Powell*, 784 P.2d 599, 601 (Wyo.1989).

We hold that the trial court properly granted summary judgment on Century's claims against Rundquist & Hard, P.C. and Chris Hard.

*Summary Judgment for Tom Barker d/b/a C.E. & M.T.*

Negligence

■ The trial court granted summary judgment against Century on its negligence claim against Barker on the ground that "[t]here can be no liability for pecuniary harm, which does not involve physical harm, because of the negligent acts of another." The court cited *Champion Well Services v. NL Industries*, 769 P.2d 382 (Wyo.1989) for this proposition.

We cannot agree with the trial court that *Champion* precludes all economic damages for pecuniary harm in the absence of physical harm. *Champion* merely holds that such damages may not be recovered by an

employer for the loss of his employee's services. However, we affirm summary judgment on another ground cited by the trial court: that C.E. & M.T.'s communication of test results to the school board was not the proximate cause of Century's injuries.

The elements of a cause of action for negligence include: (1) a duty owed to the plaintiff; (2) a breach, or violation of that duty; (3) which is the proximate cause of (4) plaintiff's injuries. *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo.1990). We discussed the concept of proximate cause in *Stephenson v. Pacific Power & Light Company*, 779 P.2d 1169, 1178 (Wyo. 1989) (citation omitted): "Proximate cause is the concept 'that the accident or injury must be the natural and probable consequence of the act of negligence.' Proximate cause is normally a question of fact unless the evidence is such that reasonable minds could not disagree."

In this case the evidence presented is such that reasonable minds could not disagree. We hold as a matter of law that C.E. & M.T.'s actions were not the proximate cause of Century's injuries. After he discussed the initial test results with the board, Tom Barker did not recommend that Lower terminate its relationship with Century. Instead, he recommended that concrete pouring continue under careful scrutiny. The board voted, in spite of his recommendation, to stop pouring. Subsequently, Lower fired Century, without affirmative action on Barker's part.

The ultimate harm, which forms the injury component of Century's cause of action, was in Lower's termination of Century from the project. Lower's actions were not the natural and forseeable consequences of Tom Barker's reports to the board or of any faulty concrete tests. Lower acted independently and its actions were an independent, intervening cause of Century's harm.

An intervening cause is one that comes into being after a defendant's negligent act has occurred, and if it is not a foreseeable event it will insulate the defendant from liability. It is reasonably foreseeable if it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby.

*Buckley v. Bell*, 703 P.2d 1089, 1092 (Wyo. 1985).

The causation element of negligence was not established here. Summary judgment was therefore properly granted on Century's negligence claim against Tom Barker d/b/a C.E. & M.T.

### Interference with Contract

As stated by the trial court, Barker did not advise Lower to terminate its contract with Century. Barker did nothing to "induce" or "cause" Lower to terminate its contract. Therefore, by definition, there can be no liability for interference with contractual relations. *Dynan*, 792 P.2d at 641.

### Defamation

As stated elsewhere in this opinion, Barker's statements to the board were not defamatory. Therefore, the trial court properly granted summary judgment on Century's defamation claim against Barker and C.E. & M.T.

## CONCLUSION

The trial court's orders granting summary judgment in favor of CCSD, Tom Barker d/b/a C.E. & M.T. and Chris Hard and Rundquist & Hard, P.C., are affirmed, as there are no genuine issues of material fact and appellees are entitled to judgment as a matter of law.

URBIGKIT, Chief Justice, specially concurring and dissenting.

I concur with the reasoning and disposition of the majority in affirming summary judgment in the claims presented against the Campbell County School District and against the architects, Rundquist & Hard, P.C., and Chris Hard, individually. However, I conclude that summary judgment was inappropriately granted to Tom Barker, d/b/a Cooper Engineering & Material Testing, a soils and material testing lab

service, which on this record negligently started the entire process causing appellant to lose its contract and consequently sustain significant damages.

To that extent, with application of Restatement (Second) of Torts § 552 (1977), which does provide a proper basis for liability, I respectfully dissent. Furthermore, this is another case of the court functioning as a fact finder in order to justify summary judgment, which is inappropriate because it contravenes established and broadly applied legal principles.

## I.

### INTRODUCTION

My dissent is confined to the portion of the majority opinion that determines the testing lab cannot be held liable to Century Ready–Mix, a concrete supplier, on a theory of negligence. The majority concludes that Cooper Engineering & Material Testing's communication of test results to the School Board was not the proximate cause of Century Ready–Mix's injuries. The majority correctly states that " '[p]roximate cause is normally a question of fact unless the evidence is such that reasonable minds could not disagree.' " *Stephenson v. Pacific Power & Light Co.*, 779 P.2d 1169, 1178 (Wyo.1989).

However, I disagree with the majority's proposition that "[i]n this case the evidence * * * is such that reasonable minds could not disagree." Unless this court would be willing to reverse a jury's finding of negligence on the basis of insufficiency of evidence[1] had this case gone to trial, summary judgment is inappropriate. There-

fore, I conclude that summary judgment was improper on the issue of Cooper Engineering & Material Testing's negligence.

## II.

### ISSUE PRESENTED

Century Ready–Mix seeks to impose liability upon Cooper Engineering & Material Testing for negligently performing and reporting the testing of concrete poured by Century Ready–Mix. It claims that negligence caused Lower & Company, the general contractor, to breach its contract with Century Ready–Mix, resulting in damages to Century Ready–Mix. Cooper Engineering & Material Testing maintains that even assuming that they were negligent, Century Ready–Mix cannot recover for pecuniary harm not deriving from physical harm if that harm results from negligently causing a third person (Lower & Company) to breach its contract with Century Ready–Mix. *See Champion Well Service, Inc. v. NL Industries*, 769 P.2d 382 (Wyo.1989).

The majority distinguishes *Champion* and disagrees with the proposition that *Champion* precludes all economic damages for pecuniary harm in the absence of physical harm. It then affirms summary judgment on proximate cause grounds. I agree that a proper basis for liability was pleaded and shown in summary judgment evidence. Unfortunately, the majority assumes a fact finding responsibility and misapplies summary judgment precepts in determining proximate cause did not exist as a matter of law. *See England v. Simmons*, 728 P.2d 1137, 1150 (Wyo.1986), Urbigkit, J., dissenting.

---

1. The standard of review applied by this Court when [following trial] the sufficiency of the evidence is at issue is well settled. [At that juncture], [w]e assume that the evidence of the prevailing party is true, leaving out of consideration the evidence presented by the other party in conflict therewith, and giving every favorable inference to the evidence of the successful party that may fairly and reasonably be drawn from it. *Harmon v. Town of Afton*, 745 P.2d 889 (Wyo.1987); *M & M Welding, Inc. v. Pavlicek*, 713 P.2d 236 (Wyo. 1986). The findings of the trial court are presumed to be correct and will not be dis-

turbed by this Court unless they are clearly erroneous, inconsistent with the evidence, or contrary to the great weight of the evidence. *Eddy v. First Wyoming Bank, N.A.—Lander*, 750 P.2d 294 (Wyo.1988); *Pancratz Company, Inc. v. Kloefkorn–Ballard Construction/Development, Inc.*, 720 P.2d 906 (Wyo.1986). *O's Gold Seed Co. v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673, 676 (Wyo.1988). The test for entry of summary judgment when factual issues are presented is singularly different. *Davenport v. Epperly*, 744 P.2d 1110 (Wyo. 1987); *Cordova v. Gosar*, 719 P.2d 625 (Wyo. 1986).

## III.

## ANALYSIS

Traditionally, attempts by injured third parties to recover for damages arising out of the negligent performance of a contractual duty fail because of lack of privity. *See Ultramares Corporation v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931) and *see generally* 57A Am.Jur.2d *Negligence,* § 123 (1989). Courts first discarded the requirement of privity in product liability cases based on negligence. *See MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916). The basis of liability may be negligent misrepresentation. *Martin v. Bengue, Inc.,* 25 N.J. 359, 136 A.2d 626 (1957). Damages in product liability

suits have not been limited to physical injury; recovery has also been permitted for economic loss. *See Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). An exhaustive review of economic loss damages is provided in *Continental Ins. v. Page Engineering Co.,* 783 P.2d 641, 666–82 (Wyo.1989), Urbigkit, J., dissenting.

Courts, upon abandonment of the privity requirement, expanded tort liability by holding that a third party, not in privity of contract with a professional person or entity, may recover for negligence which proximately causes a foreseeable economic injury to him.[2] The general principle is delineated in Restatement (Second) Torts, *supra,*

---

**2.** *See Donnelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984) (architect liable on negligence theory to contractor for increased cost of construction due to error in plans and specifications); *Guardian Const. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378 (Del.Super.1990) (lack of contractual privity between design engineer and general contractor and subcontractor was not fatal to negligence and negligent misrepresentation claims against design engineer, notwithstanding fact that contractor and subcontractor were seeking purely economic damages); *Hodges v. Smith,* 517 A.2d 299 (Del.Super.1986) (surveyor had duty to anyone who might foreseeably rely on survey to conduct survey with reasonable care); *Calandro Development, Inc. v. R.M. Butler Contr., Inc.,* 249 So.2d 254 (La.App.1971) (engineer or architect must be deemed to know that his services are for protection not only of owner's interest but also surety on contractor's performance bond); *Williams v. Polgar,* 391 Mich. 6, 215 N.W.2d 149 (1974) (abstractor of title liable to foreseeable third parties not in privity of contract who relied on the abstract); *Aluma Kraft Mfg. Co. v. Elmer Fox & Co.,* 493 S.W.2d 378 (Mo.App.1973) (third party, not in privity of contract with a public accountant, has a claim against the accountant for alleged negligent audit opinion relied upon by the third party to its damage); *Davidson and Jones, Inc. v. New Hanover County,* 41 N.C.App. 661, 255 S.E.2d 580 (1979) (lack of privity of contract does not render engineering firm immune from liability to general contractor or subcontractor for damages proximately resulting from submitting bid or conducting work in reliance on negligently prepared soil test reports. Architect, in absence of privity of contract, may be sued by general contractor or subcontractor for economic loss

foreseeably resulting from architect's breach of duty of due care in performance of contract with owner); *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780 (1970) (surveyor hired by purchaser of property may be liable to third person for economic losses arising out of negligent survey); *Milliner v. Elmer Fox & Co.,* 529 P.2d 806 (Utah 1974) (lack of privity between an accountant and a relying third party is not a defense to the accountant's negligence where the accountant is aware of the fact that his work will be relied on by parties who may extend credit to his client or assume his client's obligations); *Costa v. Neimon,* 123 Wis.2d 410, 366 N.W.2d 896, 899 (1985) (real estate appraiser hired by lender should have foreseen that prospective buyer was " 'within the ambit' " of harm which could result from carelessly done appraisal and thus purchasers could recover from appraiser for negligent appraisal); and *A.E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 214 N.W.2d 764 (1974) (architect's failure to properly consider subsoil condition is negligence rendering architect liable to tenants notwithstanding lack of privity).

Additionally, there has been a significant increase in the number and types of cases where attorneys have been found liable to third parties for malpractice. *See* Annotation, *What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other Than Immediate Client,* 61 A.L.R.4th 464 (1988). *See also Licata v. Spector,* 26 Conn.Supp. 378, 225 A.2d 28 (1966) and *Security Nat. Bank v. Lish,* 311 A.2d 833 (D.C.App.1973).

Two very well reasoned cases are found from Florida law: *First Florida Bank, N.A. v. Maximum Mitchell & Co.,* 558 So.2d 9 (Fla.1990) (involving an accountant) and *A.R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla.1973) (involving an architect or engineer).

§ 552 (Topic 3. Negligent Misrepresentation).[3]

The case of *Howell v. Fisher*, 49 N.C.App. 488, 272 S.E.2d 19 (1980) is illustrative of this line of cases. A corporation engaged in mineral exploration entered into a contract with a geological engineering firm to perform a geological feasibility study on tracts of land the corporation had leased. The engineering firm's favorable report was given to potential investors who invested in the corporation and became shareholders. Shortly after the corporation started mining the tract, it was discovered that the quality, quantity and value of the minerals in the tract did not conform to the engineering firm's representations in its report. The corporation subsequently became insolvent.

The shareholders sued the geological engineering firm for negligent preparation of the soil testing report. The North Carolina court held that the shareholders' claim was a proper action for negligent misrepresentation which could be brought absent privity of contract to recover pecuniary loss where damages to identified third parties were reasonably foreseeable by the defendant.

In determining that negligence liability should be imposed to protect the foreseeable interests of third parties not in privity of contract, the *Howell* court relied on Prosser:

> "[B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person."

*Howell*, 272 S.E.2d at 23 (quoting Prosser, Handbook of the Law of Torts § 93 at 622 (4th ed. 1971)).

In the instant case, Century Ready–Mix is seeking to recover pecuniary loss it suffered as a result of Cooper Engineering & Material Testing's negligence in the absence of privity of contract. If Century Ready–Mix's damages were reasonably foreseeable by Cooper Engineering & Material Testing, Century Ready–Mix's cause of action is proper under this line of cases.

By affirming summary judgment on proximate cause grounds, the majority has gone half way by abandoning the privity requirement to now recognize that a third party, not in privity of contract with a professional person or entity, may recover for negligence which proximately causes a foreseeable economic injury to him. I believe this expansion of tort liability is the correct approach as the duty is defined by reasonably foreseeable consequences and parties.

To reach the issue of proximate cause, the majority has recognized that Cooper Engineering & Material Testing owed a duty of care in performing and reporting the compression strength test not only to the School Board that had hired it, but also to Century Ready–Mix. The majority also necessarily assumed that Cooper Engineering & Material Testing breached its duty to Century Ready–Mix, a conclusion that is adequately supported by the record. The remaining elements of a cause of action for negligence are proximate cause and injury. *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo.1990).

---

**3.** This case fits closely within Restatement (Second) Torts, *supra*, § 552, illustration 9:

> The City of A is about to ask for bids for work on a sewer tunnel. It hires B Company, a firm of engineers, to make boring tests and provide a report showing the rock and soil conditions to be encountered. It notifies B Company that the report will be made available to bidders as a basis for their bids and that it is expected to be used by the successful bidder in doing the work. Without knowing the identity of any of the contractors bidding on the work, B Company negligently prepares and delivers to the City an inaccurate report, containing false and misleading information. On the basis of the report C makes a successful bid, and also on the basis of the report D, a subcontractor, contracts with C to do a part of the work. By reason of the inaccuracy of the report, C and D suffer pecuniary loss in performing their contracts. B Company is subject to liability to B and to D.

> *See M. Miller Co. v. Central Contra Costa Sanitary Dist.*, 198 Cal.App.2d 305, 18 Cal.Rptr. 13 (1961).

## IV.

## PROXIMATE CAUSE

Proximate cause means the accident or injury must be the natural and probable cause of the act of negligence. *Fiedler v. Steger*, 713 P.2d 773 (Wyo.1986); *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo.1983). As cited earlier, " '[p]roximate cause is normally a question of fact unless the evidence is such that reasonable minds could not disagree.' " *Stephenson*, 779 P.2d at 1178. Support for this position can be found in Prosser and Keeton, The Law of Torts, § 45 at 321 (5th ed. 1984) (quoting *Healy v. Hoy*, 115 Minn. 321, 132 N.W. 208 (1911)):

> [I]n any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way. By far the greater number of the cases which have arisen have been of this description; and to this extent it may properly be said that "proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case."

The majority concludes that Lower & Company's actions (termination of Century Ready–Mix from the project) were not the "natural and foreseeable consequences of Tom Barker's reports to the board or of any faulty concrete tests" and that such actions were an "independent, intervening cause of Century's harm."

The majority then quotes *Buckley v. Bell*, 703 P.2d 1089, 1092 (Wyo.1985) (emphasis added) to support its conclusion:

> "An intervening cause is one that comes into being after defendant's negligent act has occurred, and if it is not a foreseeable event it will insulate the defendant from liability. It is reasonably foreseeable if it is a probable consequence of defendant's wrongful act or is a *normal*

*response* to the stimulus of the situation created thereby."

It is reasonable to conclude that the normal, usual and expected response to the communication of the unfavorable test results would be that the concrete supplier would be terminated and another obtained. It was a probable consequence that the School Board, upon receiving the report, would request that the contractor cease pouring more concrete and just as probable for the contractor, in response, to immediately hire a new concrete subcontractor. Therefore, I conclude that Lower Company's intervening actions were reasonably foreseeable as a normal response to the stimulus Cooper Engineering & Material Testing created by negligently testing the concrete and reporting erroneous test results to the School Board.

In a Wyoming case addressing the issue of proximate cause, Justice Blume quoted Prosser on Torts at 324 on the subject of intervening cause:

> "If the defendant's conduct was a substantial factor in causing the plaintiff's loss, it follows that he will not be absolved from responsibility merely because other causes, such as the negligence of other persons, have contributed to the result."

He continued:

> If the original wrongdoer "could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of intervening negligence of another." Shearman & Redfield on Negligence, Rev.Ed., Section 38.

*Phelps v. Woodward Const. Co.*, 66 Wyo. 33, 204 P.2d 179, 187 (1949). *See also Chandler v. Dugan*, 70 Wyo. 439, 251 P.2d 580 (1952).

I dissent from the majority's absolution of liability in favor of the negligent concrete tester in its performance of contractual responsibilities for three reasons. First, the School Board, for its benefit and use by other participants, employed Cooper Engineering & Material Testing to be accurate, not erroneous. Services required of a

testing lab are physically capable of accuracy and, thus, it is appropriate to expect accuracy.

Starting first with the notion that an accurate test was anticipated, I would question the conclusion that termination of the concrete supplier following test result failure was unusual, unexpected or inflicted by intervening cause. No one in the construction business can afford to gamble on bad concrete in building construction. If the concrete supplier fails to meet test requirements, termination of the concrete supplier from the job site is clearly inevitable. Quality is of the essence of the product and service to be provided by the concrete supplier.

Second, the majority unduly interjects intervening cause into its analysis where composite factors create the result. The decision almost reaches back to the now forsaken days when any contributory negligence foreclosed total recovery. *Borzea v. Anselmi*, 71 Wyo. 348, 258 P.2d 796 (1952); *Johnston v. Vukelic*, 67 Wyo. 1, 213 P.2d 925 (1950). *See* Wyo.Sess.Laws ch. 28 (1973) and in present form W.S. 1–1–109, comparative negligence. The "any degree of fault and you get nothing" concept was abolished by legislative adoption of the comparative negligence statute, but that thesis now seems to achieve a rebirth by a similar application of intervening cause. Obviously the bad test results, negligently provided, caused the termination of Century Ready–Mix as the supplier. Any other analysis only achieves a play on words. Whether we pursue proximate cause and intervening cause in terms of "legal cause" or "foreseeability", *England*, 728 P.2d at 1150, the conduct of the testing lab fails a liability standard under any one. *See* Restatement (Second) of Torts, *supra*, § 430 (Necessity of Adequate Casual Relation); § 431 (What Constitutes Legal Cause); and § 435 (Foreseeability of Harm or Manner of Its Occurrence).

The third problem presented by the majority is the generic effect of using proximate cause to not so discreetly destroy the entire principle of recovery provided by Restatement (Second) of Torts, *supra*,

§ 552. In this context, the majority disregards a singular volume of cases, only a few of which I have provided in footnote two of this dissent. Countervailing authority, which clarifies that action of the contracting principal does not manufacture an intervening cause, is obvious within the volume of cases cited under Restatement (Second) of Torts, *supra*, § 552 and, additionally, those addressing the general subject of third party reliance on negligently furnished information. *See* Allen, *Liabilities of Architects and Engineers to Third Parties*, 22 Ark.L.Rev. 454 (1968); Boston, *Liability of Attorneys to Nonclients in Michigan: A Re-examination of Friedman v. Dozorc and a Rule of Limited Liability*, 68 U.Det.L.Rev. 307 (1991); Prosser, *Misrepresentation and Third Persons*, 19 Vand.L.Rev. 231 (1966); Prosser, Handbook of the Law of Torts, § 93 at 622 (4th ed. 1971); Annotation, *What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other Than Immediate Client*, 61 A.L.R.4th 464 (1988); Annotation, *Negligence in Preparing Abstract of Title as Ground of Liability to One Other Than Person Ordering Abstract*, 50 A.L.R.4th 314 (1986); and Annotation, *Tort Liability of Project Architect for Economic Damages Suffered by Contractor*, 65 A.L.R.3d 249 (1975). *See also* Survey, *1990 Survey of Florida Law*, 15 Nova L.Rev. 1285 (1991).

## V.

### CONCLUSION

Cooper Engineering & Material Testing's testing of the concrete and reporting the results created the situation that served as the stimulus for the actions of the School Board and Lower & Company. Thus, Cooper Engineering & Material Testing's conduct was the motivating factor, if not the predominate cause, in contract termination and consequent loss sustained by Century Ready–Mix. I conclude that a reasonable difference of opinion exists as to the foreseeability of harm to Century Ready–Mix and the effect of the intervening actions of the contractor who was faced with a job shutdown when the concrete tested bad.

Both issues of actual negligence and proximate cause should have been jury questions. Consequently, I respectfully dissent from this summary judgment of liability when negligent performance clearly caused the damages sustained.