Arnold B. TSCHIRGI,
Appellant (Plaintiff),

v.

LANDER WYOMING STATE
JOURNAL, Appellee
(Defendant).

No. 84–218.

Supreme Court of Wyoming.

Oct. 3, 1985.

Rehearing Denied Oct. 23, 1985.

Arnold B. Tschirgi, Lander, pro se.

Charles G. Kepler of Simpson & Kepler, Cody, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

Appellant sought to recover damages resulting from the publication of alleged defamatory material by the Wyoming State Journal, a newspaper published at Lander, Wyoming. This appeal is from a summary judgment in favor of the Wyoming State Journal. We affirm.

The issue presented for our determination, as stated by appellant, is:

"When a county official acting as a private citizen (appellant) is stopped in another county for an alleged minor traffic violation and (1) passively declines to sign the citation and requests an opportunity to post bond, but (2) is threatened with several days in jail without an opportunity to post bond unless he signs the ticket, and (3) is then physically assaulted and arrested by the officers involved, but (4) remains passive and is not wrestled to the ground, can a newspaper (appellee) approximately nine months later publish that an opposing political candidate and the highway patrolman said that appellant 'was wrestled to the ground by a Rawlins highway patrolman' without [being liable] therfor * * *?"

Appellant was seeking election to a fourth term as county and prosecuting attorney for Fremont County, Wyoming. From August 12, 1982 through August 23, 1982, the Wyoming State Journal printed four articles concerning an incident which had occurred nine months earlier in which appellant had been arrested for a traffic violation. Appellant contends that portions of the articles published August 19, 1982 and August 23, 1982, were libelous in that they stated he was "wrestled to the ground" at the time of his arrest.

"When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record." *Reno*

*Livestock Corporation v. Sun Oil Company (Delaware),* Wyo., 638 P.2d 147, 150 (1981). See also, *Roth v. First Security Bank of Rock Springs, Wyoming,* Wyo., 684 P.2d 93, (1984), and *Blackmore v. Davis Oil Company,* Wyo., 671 P.2d 334 (1983).

Appellant contends he was not "wrestled to the ground." It is undisputed that he was "wrestled against his car." Viewing the record in a light most favorable to appellant, we will, for purposes of considering the propriety of summary judgment, accept as true his contention that he was not wrestled to the ground, accepting also the undisputed fact that he was wrestled against his car.

The newspaper contends that the news stories published on August 19 and 23, to which appellant objects, were substantially true; that in any event appellant was a public official (county and prosecuting attorney for Fremont County, Wyoming at the time) and as such it must appear that the articles were published with malice or reckless disregard of whether they were true or not, and that the contrary appears from the uncontroverted facts before the court. Since we will find that the articles as published were substantially true, it is unnecessary for us to decide issues concerning appellant being a public official and whether there was malice, or reckless disregard in publication.

The portions of the news stories complained of are:

*News Story of August 19, 1982.*

"An incident where Fremont County and Prosecuting Attorney Arnold Tschirgi was allegedly wrestled to the ground by a Rawlins highway patrolman has surfaced in the heated election battle between Tschirgi and Rob Denhardt.

\* \* \* \* \* \*

" \* \* \* When Ventling issued a citation, Tschirgi refused to sign it, the officer said.

"Ventling said he then arrested Tschirgi, but the attorney refused to get out of his car. By this time, the officer said he had called two additional patrolmen.

" '*WE HAD TO* drag him (Tschirgi) out of the car and *wrestle him to the ground* to get the handcuffs on,' Ventling said." (Emphasis added.)

*News Story of August 23, 1982*

"*Denhardt had initially made the allegation that Tschirgi had to be wrestled to the ground.* Last week, Ventling concurred with that statement. However, when contacted on Friday, Ventling said the county attorney was not wrestled to the ground, *but against the car.*

"Two highway patrol officers, who served as back-up during the incident, agreed with the rest of the statements Ventling made to the Journal last week. "ACCORDING TO Wayne Vantine, a highway patrolman from Medicine Bow, he was at the 'highway shop' in Rawlins when he received a call from Ventling for back-up. The officer headed out to the scene, although he heard on the radio that Highway Patrolman Tad Armstrong from Rawlins was also on his way. Vantine said he went to the scene anyway and found Ventling sitting in his patrol car with Armstrong. He said Ventling was writing out a citation for Tschirgi.

" 'Steve got out of his car and went up to Tschirgi's car and I saw him turn the citation book towards the window. I couldn't hear the conversation, but Steve opened the left hand door of Tschirgi's car. Steve motioned for Tad and I to come up to the car.

" 'Steve reached in and told him to step out of the car and Tschirgi said no. Then Steve reached in with his right hand and got ahold of Tschirgi's left wrist. Tschirgi immediately jerked his arm away from Ventling and grabbed ahold of the steering wheel with both hands,' said Vantine.

"Vantine said he then reached in and grabbed Tschirgi out of the car. 'I just flat yanked him out of the car, and kept on lifting him right up and put him

against the car. *He was not wrestled to the ground,'* said the officer.

"Vantine said Tschirgi resisted their efforts to put the handcuffs on. 'He jerked one arm away from me and Tad grabbed his arm, while I still had ahold of the other one.'" (Emphasis added.)

Appellant conceded in his deposition that, except for the statement that he was wrestled to the ground, the statements of the officers as published by the newspaper were not libelous. With respect to the use of the word "wrestling," appellant stated:

"It's possible that they could have gotten a source for that. I won't say that one or more of the Highway Patrolmen might not claim that I, that they wrestled, but—and if they did, it wouldn't be libelous."

Evidence before the trial court in support of the motions of the parties for summary judgment was in the form of depositions. Patrolman Vantine, in his deposition, reaffirmed the correctness of the Wyoming State Journal's publication of his version of the incident stating:

"Steve got out of his car and walked up to Mr. Tschirgi's car and turned the citation book around so that he could sign it.

\*   \*   \*   \*   \*   \*

"Mr. Tschirgi did not sign it. Then Ventling stepped back and opened Mr. Tschirgi's car door. And shortly afterwards he motioned for us to help, to come up to the car, which Tad and I got out and we both went up to the Tschirgi vehicle.

\*   \*   \*   \*   \*   \*

"About that time all I heard was, Steve asked Mr. Tschirgi to step out of his vehicle.

\*   \*   \*   \*   \*   \*

"Since he had refused to sign the citation, our normal procedure is to place the person that refuses under arrest.

\*   \*   \*   \*   \*   \*

"Normally by taking them out of the car and handcuffing them, putting them in a

Patrol vehicle and transporting them to the sheriff's office to jail.

\*   \*   \*   \*   \*   \*

"Mr. Tschirgi jerked his arm back away from him and grabbed ahold of the steering wheel with both of his hands. And at that time I grabbed Mr. Tschirgi and pulled him out of the car.

\*   \*   \*   \*   \*   \*

"When he grabbed ahold of the steering wheel I just reached in—I was standing right at, you might say the doorpost, and when he jerked away from Steve, I just reached in and grabbed him and pulled him out of the car.

\*   \*   \*   \*   \*   \*

"I let him get his feet under him and then I put him up against his vehicle at about approximately the back door, maybe a little bit just about the rear window, and I had him facing the car. And I was going to try to put the handcuffs on him, and—I don't remember whether I got my handcuffs, or one of them on him, or whether Tad used his, but he started to jerk away from me—

\*   \*   \*   \*   \*   \*

"\* \* \* [H]e was trying to get his arms away from us, and Mr. Tschirgi's wife got out of the car on the right-hand side, and she kept telling him to 'Quit fighting them, go with them.'

\*   \*   \*   \*   \*   \*

"Q. *Would you recall* \* \* \* *him being wrestled against the side of the car?* Would that be a proper term?

"A. *I would say he was forcefully put there, yes.*" (Emphasis added.)

A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held. Prosser and Keeton, The Law of Torts (5th ed. 1984), p. 773. It is undisputed that the material claimed to be libelous was published. It could reasonably be found defam-

atory. But, for liability to result, it must also appear that the published material was false, for truth is an absolute defense to a claim for damages resulting from libel. Article 1 § 20, Wyoming Constitution; *Ando v. Great Western Sugar Company,* 475 F.2d 531 (10th Cir.1973); 50 Am.Jur.2d Libel and Slander § 179.

The question presented here is whether the libelous statement alleged to be true must be a literal and precise statement or account of an incident or whether, being substantially true, it is sufficient as a defense to the charge of libel. In the beginning, the law of libel and slander required that literal truth of the defamatory statement be proved in order to suffice as a defense. *Gomba v. McLaughlin,* 180 Colo. 232, 504 P.2d 337 (1972); 50 Am.Jur.2d Libel and Slander § 180. Increasingly courts have recognized that injustice often resulted from requiring literal or precise accuracy in a statement, and the trend has been toward a relaxing of this requirement. Thus, it is now often said that

"it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true, or, as it is often put, to justify the 'gist,' the 'sting,' or the 'substantial truth' of the defamation." Prosser and Keeton, supra at 842. See also, *Brueggemeyer v. Associated Press,* 609 F.2d 825 (5th Cir.1980); *Maheu v. Hughes Tool Company,* 569 F.2d 459 (9th Cir.1977); *Gulf Construction Company v. Mott,* Tex.Civ.App., 442 S.W.2d 778 (1969); 50 Am.Jur.2d Libel and Slander § 180.

The Restatement of Torts 2d § 581(A), provides:

"It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance."

In *Gomba v. McLaughlin,* supra, it was said of plaintiff that he assaulted an elderly gentleman in the show-ring at a dog show at Cheyenne, Wyoming. The statement was false for the plaintiff had never been to a dog show in Cheyenne, Wyoming. In fact, he had assaulted a Cheyenne man at a dog show in Brighton, Colorado. The court held the "gist" of the defamation was the assault, that it mattered not that it occurred at Brighton, Colorado, rather than Cheyenne, Wyoming, and that the statement, therefore, was substantially true and a complete defense to the libel action.

In *Downer v. Amalgamated Meatcutters and Butcher Workmen of North America,* Tex.Civ.App., 550 S.W.2d 744 (1977), the union filed a claim upon plaintiff's bond on a printed form which asked a description of the money or property "misappropriated, stolen, or embezzled." Plaintiff contended that the money retained was not misappropriated, stolen or embezzled, but was a debt owed by him to the union and shown on the books as advances. His suit for defamation resulted in summary judgment in favor of the union. The court, on appeal, stated:

"[T]he defense of truth does not require proof that the alleged libelous statement is literally true in every detail; substantial truth is sufficient. For example, a charge that plaintiff had wasted $80,000 of the taxpayers' money was held to be substantially true, even though the actual amount was only $17,500. The court observed that no more opprobrium would be attached to a charge of embezzling the larger sum of money than to a charge of embezzling the smaller sum." 550 S.W.2d at 747.

It seems clear to us that the gist, the sting, the hurt of the article here published, was appellant's resistance to law enforcement officers attempting to perform their duty as they saw it. When it was stated in the news story that appellant refused to step from his vehicle, grasped the steering wheel tightly and resisted the officers, was forcefully pulled from his vehicle, wrestled to a position that his hands were forced behind him and put in handcuffs, the damage to his reputation, if damage there was, was complete. That was the "sting" of the article. It made little difference in the final result whether appel-

lant was wrestled against his car or wrestled to the ground. The news article reporting the incident was substantially true as a matter of law and, therefore, a complete defense to the charge. Summary judgment was correctly entered in favor of the newspaper and is, therefore, affirmed.