Victor ARYCHUK; Lillie Arychuk; Richard Asay; Dorothy Asay; Fritz Ashauer; Carolyn Ashauer; Robert Barngrover; Jean Barngrover; Ronald Bergener; Donna Bergener; Ronald Boulter; Richard Clark; Joleen Clark; Neal Colley; Judy Colley; John Coykendall; Fred Cobb; John Clay; John Cullitan; William Daley; Stanley Dennison; Anna Dennison; Donn Dunnigan; Donna Dunnigan; Karen Drennon; Richard Ellinghysen; Carolyn Ellinghysen; Colin Fay; Evelyn Fay; Frank Goglio; Cora Goglio; Ann Gordon; Jesse Griffin; Dorothy Griffin; Kent Harker; Helen Harker; Robert Henry; Robert Henry, Jr.; Frank Hill; Roy Holloway; Santina Holloway; George Jelazo; Carol Jelazo; Gerlad Kittleson; Sara Kittleson; Frank Krachid; Carolyn Krachid; Robert Lavery; Kenneth Lovett; Gloria Lovett; Leroy McNutt; Wanda McNutt; Ronald Mueller; Avery Neill; Florence Neill; Wayne Perkins; Dennis Perry; Leslie Perry; Lynn Porter; Pauling Porter; Kae Prisk; Eugene Root; Vera Root; James Skane; Laura Skane; Glenn Waggoner; Carmela Waggoner; Lou Vouzzo; and Connie Vouzzo, Appellants (Plaintiffs),

v.

STAR VALLEY ASSOCIATION, a Wyoming mutual benefit, non-profit corporation; Charles Gibbons; Harold Whitefoot; Vince Zimmer; Dean Radford; Vern Bloxham; and Roger Cox, Appellees (Defendants),

and

Leisure Valley, Inc., a Nevada corporation; and Star Valley Ranch R.V. Park, a Nevada limited partnership, Appellees (Real Parties in Interest).

Star Valley Ranch Association, a nonprofit corporation; Charles Gibbons; Harold Whitefoot; Vince Zimmer; Dean Radford; Vern Bloxham; and Roger Cox, Appellants (Defendants),

v.

Victor Arychuk, et al., Appellees (Plaintiffs).

Nos. 97-330, 98-116.

Supreme Court of Wyoming.

Feb. 28, 2000.

Representing Victor Arychuk, et al.: Robert J. Logan, San Jose, California.

Representing Star Valley Ranch Association, et al.: David F. Palmerlee of Palmerlee & Durrant, Buffalo, Wyoming; and William H. Stoddard, of Albright, Stoddard, Warnick & Albright, Las Vegas, Nevada.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The issues presented by the parties in these consolidated cases arise out of the claim of the Arychuk group, some of the owners of property in Star Valley Ranch, a recreational subdivision in Lincoln County, that their rights under a Declaration of Covenants, Conditions and Restrictions (Declaration) had been infringed. The Arychuk group alleged that the directors of the nonprofit corporation, the Star Valley Ranch Association (the Association), formed to provide and manage community services and recreational facilities for those who owned property in Star Valley Ranch, had conveyed property in the Common Area to Leisure Valley, Inc. (Leisure Valley), the developer of Star Valley Ranch, in violation of the Declaration. The property consisted of the right granted to Leisure Valley to install nineteen three-quarter inch taps into the Association's water system, which was winnowed to six such taps by the time of the conclusion of the trial. In the related case that was consolidated, the Association complains of the failure of the district court to impose sanctions on the Arychuk group for violating the Wyoming Rules of Civil Procedure. The district court ruled that the directors of the Association were given the power under the Wyoming Nonprofit Corporation Act, Wyo. Stat. Ann. §§ 17–19–101 through 17–19–1807 (Lexis 1999), to make the agreement with Leisure Valley, and that the corporate power to do so was not limited by the Declaration. The district court dismissed the claims of the Arychuk group with prejudice. It refused to impose the sanctions sought by the Association. We affirm the Findings of Fact, Conclusions of Law, and Judgment entered in the district court, but on a more limited premise than the rationale invoked by the district court. We also affirm the denial of the sanctions sought by the Association.

In the case identified as No. 97–330, this Statement of the Issues is found in the Appellants' Opening Brief, filed on behalf of the Arychuk group:

1. Did the District Court err in concluding that the Star Valley Ranch Association, as legal owner of common area in a common interest subdivision, was not restricted by the declaration of covenants, conditions and restrictions in dedicating,

* Chief Justice at time of oral argument and expedited conference; retired November 2, 1998.

transferring or otherwise encumbering that common area?

2. Did the District Court err in concluding that Leisure Valley Inc., had an easement of enjoyment in the Star Valley Ranch common area that could be used to benefit property not part of the Star Valley Ranch or for persons not members of the Star Valley Ranch Association?

This Statement of Issues is found in the Joint Brief of Appellee Defendants and Appellee Real Parties in Interest, filed on behalf of the Association and Leisure Valley:

Appellants' contention is that the Association did not have the corporate authority to agree to allow Leisure Valley to use the Association water system to deliver water to four 3/4" water taps to be provided to Leisure Valley in accordance with Paragraph 7.B.i of the MOA [Memorandum of Agreement]. Appellants contend that:

1. The Association's **express corporate powers** under the Wyoming Nonprofit Corporation Act and Article III of the Association Articles of Incorporation are **impliedly restricted** by Article V, Section 1(e) of the DCC & Rs [Declaration of Covenants, Conditions and Restrictions] to the extent that the Association did not have the authority to agree to allow Leisure Valley's use of the Association water system to deliver water to the four water taps is in accordance with Paragraph 7.B.i.

2. The Declarant's (Leisure Valley) easement of enjoyment in the Association water system **expressly reserved** in Article V, Section 1 of the DCC & Rs from which Leisure Valley can reserve use of the Association water system to deliver water to the four taps is **impliedly voided** by a "broader scheme of development" in the DCC & Rs.

3. The owners' easement of enjoyment, **expressly in favor of Leisure Valley** and the members in accordance with Article V, Section 1 of the DCC & Rs, is **impliedly** an exclusive easement of enjoyment for the benefit of the members only, **impliedly** excluding use of the Association water system by Leisure Valley to deliver water to the four taps.

4. The Declarant's **express** easement of enjoyment in Article V, Section 1 is **impliedly voided** because it is appurtenant to and can only be used for the benefit of the several lots in Star Valley Ranch owned by Leisure Valley.

The District Court disagreed with Appellants' contentions. The issues are whether the District Court correctly concluded:

3. The Association, acting through its Board of Directors, may exercise the powers set forth in Article III of the Articles of Incorporation of Star Valley Ranch Association * * *.

5. The Association, acting through its Board of Directors, may exercise the powers set forth in W.S. § 17–19–302 of the Wyoming Nonprofit Corporation Act.

6. The Wyoming Nonprofit Corporation Act (at W.S. § 17–19–301(a) and 302) does not prohibit the Association from using common area to provide services to nonmembers or to lands not within the Star Valley Ranch.

7. The Articles of Incorporation of the Association do not prohibit the Association from using Association "common area" property to serve land lying outside the Star Valley Ranch or for the benefit of persons who are not members of the Association.

11. By providing taps to lands lying outside the Star Valley Ranch in accordance with the MOA, the Association is:

a) taking action which will ensure that community water services will be supplied to the members of the Star Valley Ranch.

b) acting for the general benefit and welfare of the members of the Star Valley Ranch.

12. Providing 6 water taps to Leisure Valley in accordance with the MOA in return for all of Leisure Valley's right, title and interest, including the surrender of Leisure Valley's easement of enjoyment in the Association water system, fulfills the specific and primary purpose of the Association.

13. The Association's Board of Directors has the power and authority to enter into the MOA.

14. By executing and fulfilling the MOA, the Association is providing for the general use of the Association water system by the members of the Association.

15. The MOA is clearly to the benefit and welfare of the members of the Association, having eliminated all competing rights of use claimed by Leisure Valley in the Association water system.

28. Leisure Valley, as the declarant, owns an easement of enjoyment in the Association common area, including in the Association water system.

33. The members' easement of enjoyment is not exclusive, either in relation to Leisure Valley or in relation to the Association.

42. The DCC & Rs do not prohibit Leisure Valley from exercising Leisure Valley's easement of enjoyment in the common area for the benefit of property located outside of the Star Valley Ranch or for the benefit of persons who are not members of the Association.

45. The Association can make, or allow, any use of the common area, including the Association water system that does not "unreasonably interfere" with the owners' easement of enjoyment. * * *

46. The Association's use of the Association water system to serve Leisure Valley's forty (40) acres and unrecorded Plat 16A in accordance with the MOA is not unreasonable; to the contrary, it is reasonable under the circumstances of this case. * * *

(Emphasis in original.) This statement of issues is articulated in the Appellants' Reply Brief:

I. Appellees' factual assertions presume critical facts that are not supported by evidence or the district court[']s opinion.

1. Appellees make incorrect assumptions about use of the Association water system.

2. Appellees make incorrect assumptions about the Association's power to transfer property free of encumbrances.

3. Although ownership of the property and appurtenances that became common area was vested in the Association, the use of the common area is limited by the DCC & Rs.

In the Appellants' Brief in Case No. 98–116, the issues that are raised are:

**Issue 1.** Did the District Court abuse its discretion by denying Defendants' sanctions by concluding that the Plaintiffs' claims were not baseless, even though it found that the Plaintiffs' contentions were not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law?

**Issue 2.** Did the District Court abuse its discretion by denying Defendants' sanctions by concluding that the Plaintiffs' claims were not baseless, even though it found that the Plaintiffs' contentions had no evidentiary support?

* * *

**Issue 3.** Did the District Court abuse its discretion by denying Defendants' sanctions under W.R.C.P. 37(c) by concluding that the Plaintiffs and Plaintiffs' counsel had reasonable grounds to believe Plaintiffs might prevail even though the District Court found that the Plaintiffs' contentions were not warranted by existing law, were not warranted by a nonfrivolous argument for the extension, modification, or reversal of existing law and had no evidentiary support?

Although there is no separate statement of the issues in the Appellees' Response Brief, these arguments are identified in the Table of Contents:

A. The court's denial of sanctions under Rule 11 was appropriate and consistent with the findings of the court.

1. The Association's motion for Rule 11 sanctions was insufficient and not properly served and filed.

2. The district court properly ruled that the specific sanctions sought by the Association were not supported by any facts nor could monetary sanc-

tions be awarded for a violation of Rule 11(B)(2).

3. The district court's decision in favor of appellees was based upon the court's determination that appellees could prevail on the basis of establishment of new law.

4. The belief by a party of its representations to the court is relevant in determining if Rule 11 sanctions are applicable.

B. The district court's determination that the complaint was not baseless as defined in W.[R.]C.P. § 1–14–128 was proper.

C. The Association did not prevail on all of the issues raised in the complaint.

1. The issues as set out in the complaint do not support the contention that the Association prevailed on all claims.

2. The Association did not prevail on all motions before the court.

3. Prevailing on the issue is not the standard for determining if a complaint was baseless and subject to sanctions.

D. Rule 37 Cost–of–Proof sanction is limited to specific denials for which the party was required to prove and not for awarding attorney fees to the prevailing party in the absence of a statute or contract.

1. The Association should have pursued the remedies provided in Rule 36 rather than waiting to see how the case was decided.

2. The appellees answered, objected to or explained all but four requests either in the response or by answering the Association's interrogatories.

(a) Rule 36 is not intended to make an adversary admit the truth of an assertion that would make the adversary lose the case.

(b) Rules 36 and 37 are not intended to establish facts which are obviously in dispute or to require [an] adversary to admit conclusions of law.

(c) Appellees are not required to admit requests that are, on their face, incorrect.

E. The amount of Rule 37 sanctions is limited to reasonable expenses incurred in proving denials, not for punishing litigation abuse.

F. The Association's appeal for sanctions represents a continuing effort to intimidate, harass and punish persons who disagree with them on the matter of the MOA and in accordance with Rule 10.05 it should be certified that there was no reasonable cause for the appeal.

Leisure Valley is a Nevada corporation engaged in real estate development. In the early 1970's, Leisure Valley began selling lots in Star Valley Ranch, a rural subdivision in Lincoln County. Star Valley Ranch consists of 2,050 residential lots plus amenities such as swimming pools, golf courses, tennis courts, hiking trails, a bar, and a restaurant. The Declaration was adopted to make the lots more attractive to potential buyers and to maintain property values. Leisure Valley organized the Association as a nonprofit corporation for the benefit of the lot owners to enforce the Declaration and to own, manage, and maintain the common area, which consists of the property acquired by the Association for the common use and enjoyment of the members. All lot owners in Star Valley Ranch are automatically members of the Association.

As part of the development, Leisure Valley constructed a water system, including reservoirs and a pipeline, to serve Star Valley Ranch. Leisure Valley received approval to appropriate water for the development from Prater Canyon in 1971, and in 1982 it acquired rights to additional water from Stewart Springs and an appurtenant pipeline. Leisure Valley used its water system to supply Star Valley Ranch, and also Star Valley Ranch R.V. Park (the R.V. Park), which it built on forty acres adjacent to Star Valley Ranch.

In 1985, the Association and Leisure Valley signed a Memorandum of Agreement by which Leisure Valley agreed to convey the common areas, including the water system and amenities, to the Association. Leisure

Valley reserved an undivided one-half interest in the Stewart Springs water system and water rights, along with a transferable easement to use all the pipelines located in the roads at Star Valley Ranch. It also agreed to construct a connecting pipeline between the Prater Canyon and Stewart Springs systems, allowing water from the two sources to co-mingle. The provisions of this agreement were implemented by a deed that was executed contemporaneously, which included the specific reservation of the Leisure Valley interest in the water and the water system.

Some years after the agreement and deed were executed, a dispute, primarily over water, arose between the Association and Leisure Valley. The dispute manifested itself in administrative agency proceedings and in litigation in the district court. Rather than litigate their differences, Leisure Valley and the Association entered into another Memorandum of Agreement on December 23, 1996, which stated:

1. **Purpose of MOA.** This MOA sets forth the basic terms and conditions of the agreement between the Association and Leisure Valley for the Association's acquisition of Leisure Valley's interest in the Star Valley Ranch Subdivision Culinary and Irrigation water system and to settle all pending and threatened disputes between the parties, relating to both domestic/culinary and irrigation water rights, water storage, water distribution systems, roads, access, easements, reversionary rights, pending litigation, pending administrative proceedings and other matters as set out herein.

The 1996 Memorandum of Agreement required Leisure Valley to convey its water rights and interests in the Star Valley Ranch water system to the Association, excepting sufficient rights to supply Leisure Valley's adjacent properties. In return, the Association was required to allow Leisure Valley to connect additional water lines to the Star Valley Ranch water system to supply Leisure Valley's adjacent properties, and pay Leisure Valley $220,000.00. In addition, the agreement included a number of other provisions not pertinent to this appeal.

The Arychuk group own lots in Star Valley, and are members of the Association. On February 10, 1997, Arychuk filed a declaratory judgment action in the district court, naming Leisure Valley, the Association, and its directors as defendants. The Arychuk group sought a determination that the agreement for the water taps violated the Declaration, and asked the district court to enjoin the performance of several portions of the 1996 Memorandum of Agreement. Before trial, the parties narrowed the dispute to just two provisions of the 1996 Memorandum of Agreement, involving six of the water taps, both of which allowed Leisure Valley to connect to the Star Valley Ranch water system.

The parties presented their evidence and arguments during a two-day bench trial on June 30 and July 1, 1997. The Arychuk group contended the Association acted in excess of its authority and in violation of the Declaration by allowing the water system to be used for the benefit of property outside the subdivision. The Arychuk group relied upon an asserted property right granted by the Declaration found in this language:

## ARTICLE V

### PROPERTY RIGHTS

*Section 1. Members' Easements of Enjoyment.* Every Owner shall have a right and easement of enjoyment in and to the Common Area and such easement shall be appurtenant to the respective Lot or parcel for which each Owner holds such interest and shall pass with the title to every assessed Lot or parcel, subject to the following provisions: * * *[.]

The Arychuk group argued that this property right was implemented by Article II of the Articles of Incorporation for the Association, which defined the specific and primary purpose of the corporation in this way:

[T]he specific and primary purpose for which this corporation is formed is to provide community services and recreational facilities for the general use, benefit and welfare of the owners, contract purchasers, lessees, sublessees and/or occupants of residential lots situated within that certain

real property located in Lincoln County Wyoming, known as the STAR VALLEY RANCH * * *.

The premise of the argument for the owners was that the 1996 Memorandum of Agreement conveyed a right to use the water system of Star Valley Ranch, a part of the common area, in violation of their easement of enjoyment.

The Association and Leisure Valley responded that Leisure Valley itself had water rights and an easement in the pipeline, and could therefore use the water system even without the rights conferred in the 1996 Memorandum of Agreement. The defendants also contended that Leisure Valley had an easement of enjoyment in the common area which justified the agreement for the taps. The 1996 Memorandum of Agreement, they argued, served the best interests of the Association members by minimizing the impact of Leisure Valley's water use. They also asserted that the 1996 Memorandum of Agreement was justified under the corporate powers granted by statute to nonprofit corporations and by the Articles of Incorporation.

In its Findings of Fact, Conclusions of Law, and Judgment issued August 27, 1997, the district court found the Association had authority to carry out the 1996 Memorandum of Agreement, and ordered Arychuk's claims dismissed with prejudice. While the district court did not make a specific finding with respect to the source of the rights afforded to Leisure Valley, it is clear that the genesis of the taps in issue, provided in the 1996 Memorandum of Agreement, is the rights reserved to Leisure Valley in the 1985 agreement and deed. We do not invade the fact finding function of the district court, but it seems it would be possible to find that rather than constituting a conveyance of part of the common area, the provision for the water-line taps simply amounted to a concrete identification of the manner of using a general right that Leisure Valley had reserved in 1985.

In its Conclusions of Law, the district court ruled that the Association enjoyed broader powers than those set forth in Article II, which, according to Article III, included the power to do those things that a nonprofit corporation may lawfully do. The district court ruled that the 1996 Memorandum of Agreement was authorized by the provisions of the Wyoming Nonprofit Corporation Act, and those provisions did not prohibit the Association from using "common area" to provide services to nonmembers nor from using such property to serve land lying outside Star Valley Ranch or for the benefit of persons who were not members of the Association. These and other conclusions of law made it plain that the Declaration was subordinate to the corporate powers of the Association found in both the Articles of Incorporation and the statutes. The Arychuk group appeals from the Findings of Fact, Conclusion of Law, and Judgment.

The focus of the concerns of the Arychuk group is that the determination of the district court leaves open the utilization of the common area property by the Association for anything it may choose to do with it. During oral argument of this case, the following dialogue occurred between one of the Justices and counsel for the Arychuk group:

Justice: Let a, let me ask you about that Mr. Logan. If you prevail in this appeal, what would inhibit Leisure Valley from building another pipeline through the same streets to reach the taps that are being, that are in issue here?

Mr. Logan: Nothing. They could come up . . .

Justice: Wouldn't that . . . wouldn't that be a bit wasteful.

Mr. Logan: Your honor, I guess I can't disagree with the Court that that would be wasteful. I can't disagree with the Court that there ought to be some way that one could establish the way to move that water through that common area use, but what I am disagreeing with is the district court's finding that the common area can be used by this association for whatever interest or whatever it wants to do. I . . . . that's the biggest concern of my clients in this case. Is . . .

Justice: It would seem to me that your clients would be well served if the rule was that the only reason the MOA can

be justified is in settlement of the litigation.

Mr. Logan: Your honor I could be very much more comfortable with that if that were the rule that could arise out of this. I. . . .

\* \* \*

Mr. Logan: I simply don't know how to make that the rule.

Justice: That that doesn't open up the other jeopardy that you are concerned about.

Mr. Logan: That's correct your honor. And that's something that I think had this judge carefully crafted I have been willing to recommend to my clients that that's a sensible solution to a very complicated problem.

Justice: I am leading you very deftly into a proposition that we invoke on occasion, and that is that we can affirm for any proper reason.

Mr. Logan: Uhm . . . . that's true, your honor. I guess my only concern is whatever affirmance occurs makes it clear that this doesn't open the flood gates. This doesn't open the door to this association suddenly saying we are, we are a corporation, we have all of these broad corporate powers, we don't really care what the declarations say, we can do what we want to do.

■ Covenants such as the Declaration are contractual in nature, and they are to be interpreted, and we believe enforced, according to principles of contract law. *McLain v. Anderson*, 933 P.2d 468, 474 (Wyo.1997); *Anderson v. Bommer*, 926 P.2d 959, 961 (Wyo.1996); *McHuron v. Grand Teton Lodge Co.*, 899 P.2d 38, 40 (Wyo.1995). As we said in *Sinclair Oil Corp. v. Columbia Cas. Co.*, 682 P.2d 975, 979 (Wyo.1984):

We will not invalidate a contract entered into freely by competent parties on the basis of public policy unless that policy is well settled, unambiguous and not in conflict with another public policy equally or more compelling.

In most circumstances, the Arychuk group could expect that their contractual rights under the Declaration would be honored and enforced.

■ It is, however, well established that this Court can affirm a judgment of the trial court for any proper reason appearing in the record. *Walker v. Karpan*, 726 P.2d 82, 89 (Wyo.1986); *Willard Given & Associates, P.C. v. First Wyoming Bank–East Cheyenne*, 706 P.2d 247, 251 (Wyo.1985), and the cases cited in those authorities. The purpose of the 1996 Memorandum of Agreement is articulated clearly in the record. That purpose falls within a specific power granted to a nonprofit corporation pursuant to Wyo. Stat. Ann. § 17–19–302(a)(i), which states:

(a) Unless its articles of incorporation provide otherwise, every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its affairs including, without limitation, power:

(i) To sue and be sued, complain and defend in its corporate name[.]

We conclude that in this case, the determination of the district court, while correct on the facts, appropriately is limited to resolving any conflict between the Declaration and this particular provision of the Wyoming Nonprofit Corporation Act.

■ Authority to settle litigation, which was one of the purposes contemplated by the 1996 Memorandum of Agreement is an essential corollary of this statutory provision. In 1994, we said:

We recently observed that we acknowledge a strong public policy in favor of settlement of litigation. *Haderlie v. Sondgeroth*, 866 P.2d 703 (Wyo.1993) (citing *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27 (Wyo.1983); *Coulter, Inc. v. Allen*, 624 P.2d 1199 (Wyo.1981)).

*City of Cheyenne v. Reiman Corp.*, 869 P.2d 125, 129 (Wyo.1994). The exigencies of litigation, including settlement, as a practical matter cannot be limited by rights such as those asserted by the Arychuk group based upon the Declaration. Often, time is of the essence in settlement negotiations and settlement agreements. Furthermore, any requirement that the lawyer handling the liti-

gation should by concerned with the rights of members or shareholders, as distinguished from the corporate client, would create an ethical quagmire for attorneys. We hold that in the circumstances disclosed by this record, the policy favoring enforcement of the rights of contracting parties must yield to the policy supporting compromise and settlement of disputes.

We hold that the reach of the decision by the district court in this case extends only to the six three-quarter inch, water-line taps ultimately in issue before the district court. Affirmance of the decision of the district court is limited to those six taps for the reasons set forth above. Because of the action of the parties in limiting the subject matter of the action before the district court, its decision relates only to the subject matter of the action as so limited and does not extend to any issues beyond the six water-line taps. As so limited, the Findings of Fact, Conclusions of Law, and Judgment of the trial court is affirmed.

This Court adopted the rule that the district court is vested with discretion in imposing sanctions under W.R.C.P. 37 in *Matter of Mora's Estate*, 611 P.2d 842, 846 (Wyo.1980). We have followed that rule consistently in the cases decided after that decision. *Global Shipping & Trading, Ltd. v. Verkhnesaldincky Metallurgic Co.*, 892 P.2d 143, 145–46 (Wyo.1995) (*quoting Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174, 1177–80 (Wyo.1986)). The same rule is invoked with respect to sanctions sought under W.R.C.P. 11. *Meyer v. Mulligan*, 889 P.2d 509, 517 (Wyo.1995); *Davis v. Big Horn Basin Newspapers, Inc.*, 884 P.2d 979, 983 (Wyo.1994); *LC v. TL*, 870 P.2d 374, 381 (Wyo.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). We are satisfied that the district court did not abuse its discretion in refusing to impose the sanctions that are the subject of the appeal in Case No. 98–116, which was consolidated with Case No. 97–330. The Order Denying Sanctions is affirmed.